UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In Re: CHILD VICTIMS ACT CASES REMOVED FROM STATE COURT.

MEMORANDUM OF DECISION & ORDER

Civil Action No. 23-5029(GRB) and related cases[1]

----------------------------------------------------------X

**GARY R. BROWN, United States District Judge**:

Critics of the law have long decried unimaginable delays and costs that can arise from excessive litigative wrangling.[2] Such waits can range from the intolerable to the unconscionable. The matters discussed herein fall squarely into the latter category.

Before the undersigned are 42 actions brought under the New York Child Victims Act, alleging child sexual abuse at the hands of individuals associated with the defendants, and recently removed from several state courts. Approximately 224 such actions are pending in this district before 17 judges. Based on the following, the cases identified in the Appendix are hereby REMANDED.

*Background*

The instant actions were removed after the lifting of a stay in a bankruptcy proceeding commenced by the Diocese of Rockville Center (the "Diocese") in the Southern District of New York.[3] The removals were effected by various organizations, including local parishes and schools

---

[1] The Appendix contains a complete list of the case captions and docket numbers subject to this opinion.
[2] *See Carson Optical, Inc. v. Hawk Importers, Inc.*, No. 12-CV-1169 (GRB), 2013 WL 5740452, at *1 (E.D.N.Y. Oct. 10, 2013) (quoting Charles Dickens' *Bleak House* (1853)).
[3] According to counsel for defendants, the Diocese commenced the bankruptcy action "to achieve its twin goals of timely and equitably compensating victims, and ensuring the DRVC emerges from bankruptcy able to continue its charitable mission." DE 9 at 7. Diocesan counsel represents that defendants and the Diocese "are steadfast in their commitment to provide equitable compensation to abuse claimants." *The Roman Catholic Diocese of Rockville Center, New York*, Case No. 1:23-CV-5751 (LGS) (SDNY), DE 2. These are laudable goals. However, the record of

affiliated with the Diocese. Portions of the labyrinthian history of the bankruptcy proceedings are described in a recent opinion of the Bankruptcy Court denying a preliminary injunction, familiarity with which is assumed and which is incorporated by reference. *In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 622 (Bankr. S.D.N.Y. June 1, 2023) (hereinafter the "*PI decision*").[4] Paradoxically, the relationship of these cases to that proceeding, commenced by the Diocese in anticipation of these claims, provides the sole jurisdictional basis for their removal, even though the Diocese is not a defendant in these cases, and the nature and extent of the "relationship" has already come under some scrutiny.

The history of these matters includes the following: In 2019, in "an extreme exercise of legislative power," New York State enacted the Child Victims Act ("CVA"), C.P.L.R. § 214-g, "which afforded victims of childhood sexual abuse a limited period of time within which to pursue their claims of sexual abuse through the judicial system." *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 558 (E.D.N.Y. 2021), *appeal dismissed sub nom. Doe v. Poly Prep Country Day Sch.*, 2022 WL 14807756 (2d Cir. 2022). The legislative intent behind this enactment is set forth in the Sponsoring Memorandum accompanying the bill:

> Because of these restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety.

---

the proceedings requires one to consider whether the lengthy delays, procedural meanderings and the stratagems adopted by Diocese's outside counsel serve or undermine these objectives. Merely by way of example, as part of its "*Ninth Omnibus Objection*" in the bankruptcy case, counsel advocated that certain sexual abuse survivors—irrespective of the evidence—should be denied *any* recovery because the Diocese "was actually formed for liability purposes (1957 versus 1958) as an issue of Catholic Canon Law," which counsel claimed could not be reviewed by a federal judge. *In re Roman Cath. Diocese of Rockville Ctr., New York*, 652 B.R. 16, 32 (Bankr. S.D.N.Y. 2023) (holding that "the Court finds it is not prohibited from addressing questions regarding the Diocese's creation merely because the Diocese is a creature of canon law.") And not all defendants share the Diocese's purported vision of providing compensation. *See* DE 9 at 12 ("On the contrary, the Defendant seeks vindication through an expeditious adjudication in Federal Court.")

[4] The incorporation by reference of Chief Judge Martin Glenn's opinion helps this decision issue with appropriate dispatch. While a leisurely examination of the issues and complexities of these proceedings could fill a tome, the important interests at stake and the pressing need to avoid further delay rendered such extended review unjust.

> This legislation would open the doors of justice to the thousands of survivors of child sexual abuse in New York State by [ ] establish[ing] a one-year window in which adult survivors of child sexual abuse would be permitted to file civil actions, even if the statute of limitations had already expired or, in the case of civil actions against public institutions, a notice of claim requirement had gone unmet.
>
> Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties.

N.Y. State Assembly Mem. Supp. Legislation, reprinted in Bill Jacket for 2019 S.B. 2440, Ch. 11, at 7 (Jan. 29, 2019).  Reviewing its constitutionality, Judge Diane Gujarati held that "the CVA seeks to remedy an injustice" and represents a "reasonable response to the identified injustice." *PC-41 Doe*, 590 F. Supp. 3d at 562.

Significant problems subject to the CVA relate specifically to the Diocese.[5]  As noted by the Bankruptcy Court:

> Many of the Claims and State Court complaints reference the findings of the Suffolk County Supreme Court Special Grand Jury, Term 1D, empaneled on May 6, 2002, and thereafter extended to February 28, 2003, to complete its investigation into the Diocese of Rockville Centre and its Priests and Parishes. The Grand Jury heard testimony from 97 witnesses and considered 257 exhibits.  The Grand Jury Report was released on May 6, 2002.  It found that the Debtor had engaged in a practice of "aggressive legal strategies ... employed to defeat and discourage lawsuits even though Diocesan officials knew they were meritorious." (Grand Jury Report at 106.) The Grand Jury Report found that the "general failure of supervision from officials of the Diocese, to individual pastors and other priests living in rectories, compounded and perpetuated these violations with devastating consequences for children." (*Id.* at 5.)

*PI Decision*, 651 B.R. at 156 (*purgandum*).[6]  As a result, "[p]ursuant to the CVA, hundreds of victims have sued the Diocese and related entities for negligence related to the acts of sexual abuse

---

[5] In its conclusions, the 2003 Grand Jury report concerning the Diocese recommended legislative reforms nearly identical to those eventually adopted by the Legislature.  Grand Jury Report at 179.
[6] *See Farmers Property and Casualty Insur. Co. v. Fallon, et al.*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "*purgandum*" to indicate the removal of superfluous marks for the ease of reading).

3

allegedly committed by clergymen working for the Diocese." *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, 2022 WL 17593312, at *1 (S.D.N.Y. 2022) (summarizing allegations made by the Diocese). The CVA yielded "hundreds of state court actions by Survivors against the Debtor and/or DRVC Related Parties by plaintiffs with claims based on sexual abuse." *PI Decision*, 651 B.R. at 628. In response, the Diocese commenced a bankruptcy proceeding in October 2020. *Id.* The parties agreed to a preliminary injunction temporarily staying the state court actions. *Id.* In the years that followed, according to the Bankruptcy Judge overseeing the matter:

> [T]here has been little discernible progress in reaching a consensual plan of reorganization. More than 500 sexual abuse claims have been asserted against the Debtor or DRVC Related Parties in state court, many of which arise from alleged sex abuse that occurred decades ago. These sex abuse survivors have essentially been stymied in their efforts to obtain compensation since this chapter 11 case was filed.

*Id.*

Eventually, agreement as to the stay of the state court proceedings evaporated, as the claimants withdrew their consent in January 2023. *Id.* at 631. The Diocese had moved months earlier for a preliminary injunction imposing a stay of the state court actions over the objection of the Survivors, which the Bankruptcy Court then considered, issuing a ruling in June 2023.

After extensive analysis, the Bankruptcy Court rejected the Diocese's effort to continue the stay, holding that "the Court believes it is time to permit the plaintiffs to move forward with their State Court Actions." *Id.* at 664. In reaching this conclusion, Chief Judge Glenn recognized the unfair burdens thrust upon plaintiffs, which would only be exacerbated by continued obstruction of the state court actions:

> For every day the injunction lasts, they are not only prevented from pursuing recovery on their claims, but their ability to prove their underlying case is weakened. For many Survivors, allowing time to pass means that they simply may not be able to recover either because the evidence for their case is lost, or because

4

> they themselves do not live long enough to press their claims. Importantly, these are claims they would be entitled to bring, if not for the stay in this case. It is clear that these harms to the Survivors become more significant with each passing day in this case, and in the past thirty months have eclipsed what is now a much more incidental—and certainly less consequential—harm for the Debtor, in having a limited role in participating in litigation against non-debtors.

*Id.* at 666. The Diocese "completely fail[ed] to show that an injunction is warranted beyond the completion of mediation," the Bankruptcy Court concluded. *Id.* at 668. "It similarly fail[ed] to show that an injunction is warranted to transfer or remove the State Court Actions simply for the sake of providing the DRVC Related Parties more breathing room." *Id.*

Undaunted, and rather than accede to plaintiffs' efforts to seek their day in court, the defendants immediately removed hundreds of state cases to this Court, invoking "related to" jurisdiction under 28 U.S.C. §1334(b), again deploying procedural devices to scuttle plaintiffs' opportunity to have their cases heard. In so doing, the defendants flouted previous decisions by slinging arguments considered and rejected by the Bankruptcy Court. *Compare, e.g.*, DE 1 at ¶ 9 (asserting that the state court action "threatens to expose the Debtor's estate to claims for indemnity or contribution by the Defendant"), *with PI Decision*, 651 B.R. at 658 (holding that "[w]hile this Court was satisfied with the understanding of how indemnity claims could have arisen in *1031 Tax Grp.*, such that there was a risk of such claims, the same cannot be said here" and "[t]he [Diocese failed] to articulate any scenarios leading to indemnification").

Various filings have been made in these actions, which fall into several categories: first, in numerous cases, the parties have fully briefed motions to remand these proceedings to state court. In other cases, the parties have filed briefing schedules for similar motions. Finally, in each action, the Diocese—a non-party—has filed "notices" advising that the Diocese and related defendants have filed a "joint petition" in the Southern District of New York to "fix venue" and "transfer the action" to that court. *See, e.g.*, DE 5. As the filed and anticipated motions to remand present

identical issues, for the purposes of this decision, the Court has selected one fully (and thoroughly) briefed motion in an action entitled *Schramm v. Suffolk County Counsel, Boy Scouts of America and St. Elizabeth Church*, Case No. 2:23-CV-5029.[7]

### *Discussion*

#### *Motions to Remand*

While these cases raise a broad spectrum of issues, the question before the Court is remarkably narrow. A "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters* Loc. 272, 642 F.3d 321, 327 (2d Cir. 2011). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). Plaintiffs move to remand, arguing that this Court must abstain from the exercise of "related to" jurisdiction under 28 U.S.C. §1334(c)(2). Such abstention is required if plaintiff satisfies a six-factor test. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003) (listing factors). The parties agree that only the sixth factor is at issue, to wit: whether "the state court action can be timely adjudicated." *See id.*; DE 9 at 26 (defendants' acknowledging that "the first five factors are undisputed").

Defendants properly argue that the plaintiffs must produce more than a "naked assertion" that the state court can timely resolve the subject actions. *See Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986). Yet plaintiffs offer far more. New York has invested unprecedented resources to resolving the actions revived under the CVA. First, the statute makes provision for expeditious resolution of these cases,

---

[7] Unless otherwise noted, all docket entry ("DE") cites in this opinion refer to the *Schramm* matter.

6

including "special trial preferences" for cases revived pursuant to the CVA,[8] specialized training for judges,[9] and the promulgation of rules designed to promote rapid resolution.[10]  Moreover, in the relatively brief time that these matters were pending before the state courts, substantial efforts were made to effectively manage the cases:

> In November of 2019, the State Court entered a case management order.  The Case Management Order stated that one of its objectives was the "standardization of initial discovery so that the parties can obtain the necessary information to evaluate cases for possible settlement at minimum cost" and "coordination of motion practice, discovery, and other matters . . . ."  The order created separate "liaison counsel" to represent the interests of plaintiffs and defendants and directed the liaison counsel to work together to propose "Standard Consolidated Disclosures" for all parties, including the Survivors, to exchange discovery.

*PI Decision*, 651 B.R. at 156 (*purgandum*).  Notably, these steps are redolent of those taken by this Court in its endeavors to manage unwieldy, large-scale litigation.  *See, e.g.*, *In re Hurricane Sandy Cases*, 303 F.R.D. 17, 26 (E.D.N.Y.), *aff'd sub nom. Raimey v. Wright Nat. Flood Ins. Co.*, 76 F. Supp. 3d 452 (E.D.N.Y. 2014) (discussing judicial management actions, which included case management orders, standardization of disclosures and discovery, and appointment of liaison counsel).   Finally, New York has created a "dedicated part" within each relevant court—akin to its renowned Commercial Division—specifically devoted to handling CVA cases.[11]  Assignment of cases to a dedicated part has been found to satisfy the timely adjudication requirement.  *BGC Partners, Inc. v. Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310, 320 (S.D.N.Y. 2013) (timely adjudication element satisfied based on finding that "no foreseeable significant difference in the comparative speed of adjudication of [the Southern District] and the Commercial Division," justifying mandatory abstention and remand); *In re Residential Cap., LLC*, 488 B.R. 565, 576

---

[8] N.Y. C.P.L.R. § 3403(a)(7).
[9] N.Y. COMP. CODES R. & REGS. tit. 22, § 202.72(b).
[10] *Id.* § 202.72(c).
[11] N.Y. COMP. CODES R. & REGS. tit. 22, § 202.72(a).

(Bankr. S.D.N.Y. 2013) ("this Court's familiarity with the work of the Commercial Division strongly counsels a finding that the case could be timely adjudicated in state court").

Resolution of these 224 cases, most involving the collection and examination of evidence of events that occurred decades ago, will necessarily take some time irrespective of which tribunals handle them. All indications, however, reflect a serious, sustained effort by the State to move these matters forward, which stands in stark contrast to the years wasted by the Diocese during the pendency of the bankruptcy proceedings.[12]

Based on the foregoing, plaintiffs have made a persuasive showing that the state courts can timely resolve the subject actions. The State's substantial investment in these actions reflects its strong interests in these matters, heightening the incursion represented by defendants' mass removal and further militating in favor of remand in the interests of comity. Thus, abstention is mandated by the statute and remand is required. Even assuming that mandatory abstention did not apply, remand appears appropriate under the doctrines of permissive and equitable abstention. *See Libertas Funding, LLC v. ACM Dev., LLC*, No. 22-CV-0787 (HGM)(MH), 2022 WL 6036559 (E.D.N.Y. Oct. 7, 2022). Therefore, plaintiffs' motions to remand these cases prove meritorious and should be granted.

---

[12] Notably, the Bankruptcy Court issued more than a dozen reported opinions in that action, mainly in response to procedural barriers erected by the Diocese. This is alarming given the grand jury findings that the Diocese had historically engaged in "aggressive legal strategies . . . employed to defeat and discourage lawsuits." Moreover, while the Diocese made "little discernible progress in reaching a consensual plan of reorganization," *PI Decision*, 651 B.R. at 628, two other New York dioceses reached or proposed global settlements with CVA Survivors. Corky Siemaszko, *Catholic diocese agrees to pay $100 million settlement to hundreds of abuse victims*, NBC NEWS (July 28, 2023, 3:53 PM), https://www.nbcnews.com/news/us-news/catholic-diocese-agrees-pay-100-million-settlement-hundreds-abuse-vict-rcna96904; James Battaglia, *$50.75 million added to settlement for survivors of Diocese of Rochester clergy abuse*, ROCHESTER FIRST (updated July 21, 2023, 11:24 PM), https://www.rochesterfirst.com/news/top-stories/50-75-million-added-to-settlement-for-survivors-of-diocese-of-rochester-clergy-abuse/.

*Defendants' Argument to Defer Pending SDNY Decision*

In each of the 224 cases removed to this Court, counsel for the Diocese filed[13] a copy of its joint petition to "fix venue" addressed to Judge Schofield in the Southern District. Counsel for defendants rely upon this filing to argue that this Court should defer decision on the motions to remand pending a decision on the Diocese's application.[14]

Defendants contend that "it is clear that section 157(b)(5) gives the Southern District power to transfer cases directly from state courts," DE 9 at 30, a proposition that renders the mass removals (and all of the attendant disruption and inefficiencies) irrelevant and unnecessary.[15] At the same time—indeed, in the very same sentence—counsel represents that "Defendant removed this case to make transfer more efficient in this and the 223 other cases subject to the 157(b)(5) Motion." *Id.* How can removing 224 cases from the state court system, resulting in their reassignment to 17 district judges in this court, engendering thousands of individual filings, all in the hopes of having the cases transferred to yet another court be deemed an "efficiency"? No answer has been provided. In urging this Court to defer ruling, defendants also argue:

> Ruling on the motion to remand now, without first hearing from the Southern District about whether this case belongs in federal or state court, would waste judicial resources by requiring the Court to resolve questions that will be overridden by the Southern District's decision. *And it risks whipsawing the parties and the state court about the location of this action.*

---

[13] These filings, which seek no relief from this Court, were improperly made, as the Diocese is not a party to these actions, and counsel filed documents without seeking leave to do so. "Not surprisingly, there is little precedent which deals with the issue of when a non-party may properly file some document with the Court-perhaps because, for the most part, non-parties understand that they do not have blanket permission to file papers in cases in which they are not involved, and seldom have any reason to attempt to do so." *DRFP, LLC v. Republica Bolivariana de Venezuela,* 2012 WL 995288, at *2 (S.D. Ohio 2012).

[14] By this argument, defendants reveal that the removals as a kind of charade, as the cases were removed to this Court simply as a pass-through to implement a plan to transfer the cases to the Southern District. Such cavalier treatment of removal powers further supports remand. *See O'Reilly v. Mackris*, 556 F. Supp. 3d 166, 171–72 (E.D.N.Y. 2021) ("this case has no place before this Court. [O]ne potential outcome of these continued machinations, in the view of defendant's counsel, is yet another effort to transfer this matter back to the Southern District of New York. This is entirely unacceptable.").

[15] Putting aside the incalculable human cost of these legal maneuvers, the economic costs are also staggering. Merely by way of example, the filing fees paid to remove these 224 cases from state court total nearly $100,000. And when it comes to litigation expenses, court filing fees constitute, figuratively speaking, small change.

*Id.* at 30 (emphasis added). Somehow, the parties responsible for the wholesale removal of hundreds of cases from state court to this district while simultaneously seeking their transfer to the Southern District seem to lack the moral standing to raise concerns about "whipsawing the parties and the state court about the location of this action."

In the end, defendants provide no persuasive authority suggesting this Court should withhold decision on proper, meritorious motions for remand. Of course, determination of defendants' motion to fix venue rests entirely with Judge Schofield, and the undersigned offers no opinion regarding that application. However, in arguing that this Court should withhold its decision "regardless of whether the Court believes remand is appropriate" pending the resolution of its §157(b)(5) motion, defendants appear to seek tacit approval from this Court—by proposing its silence—of the dubious procedural devices they have unleashed. Because the plaintiffs are entitled to timely consideration of their claims, and defendants' arguments are without basis in law, the request to defer decision is rejected as unlawful and unfair.

## CONCLUSION

Based on the foregoing, the cases listed in the Appendix are hereby immediately REMANDED to state court. The Clerk of the Court is directed to transfer the appropriate records to the clerks of the relevant state courts forthwith, and close the cases.

**SO ORDERED.**

Dated: Central Islip, New York
      August 10, 2023

                                                           /s/ Gary R. Brown
                                                           GARY R. BROWN
                                                           United States District Judge

# Appendix

| |
|---|
| 2:23-cv-04713-GRB-ST<br>**Demarco v. Our Lady of Victory Parish Elementary School, et al** |
| 2:23-cv-04725-GRB-LGD<br>**J.D. v. Saint Bernard's Roman Catholic Church** |
| 2:23-cv-04742-GRB-LGD<br>**A.D. v. The Cathedral of St. Agnes** |
| 2:23-cv-04744-GRB-ST<br>**F.K. v. Holy Family Roman Catholic Church** |
| 2:23-cv-04799-GRB-LGD<br>**ARK452 Doe v. St. Rose of Lima, et al** |
| 2:23-cv-04831-GRB-SIL<br>**Cuomo v. St. Dominic's Roman Catholic Church at Oyster Bay** |
| 2:23-cv-04840-GRB-LGD<br>**T.F. v. Claretian Missionaries USA-Canada Province et al** |
| 2:23-cv-04860-GRB-LGD<br>**Beltran v. St. Raymond of Penyafort et al** |
| 2:23-cv-04874-GRB-SIL<br>**JA-130 Doe v. Theodore Roosevelt Council, Inc., et al** |
| 2:23-cv-04895-GRB-AYS<br>**ARK513 Doe v. St. Raphael et al** |
| 2:23-cv-04905-GRB-ST<br>**ARK517 Doe v. St. Dominic's et al** |
| 2:23-cv-04906-GRB-ST<br>**ARK518 Doe v. St. Bernard et al** |
| 2:23-cv-04939-GRB-ST<br>**Camilleri v. St. Ignatius Loyola Roman Catholic Church, et al** |
| 2:23-cv-04953-GRB-LGD<br>**Wilson v. St. Pius X Roman Catholic Church et al** |
| 2:23-cv-04959-GRB-LGD<br>**Artusa v. St. Joseph's RC Church** |
| 2:23-cv-04976-GRB-SIL<br>**ARK540 Doe v. Our Lady of Victory et al** |
| 2:23-cv-04979-GRB-ST<br>**Vensky v. Our Lady of Peace School et al** |
| 2:23-cv-04986-GRB-AYS<br>**Meadows v. St. Barnabas the Apostle Roman Catholic Church et al** |
| 2:23-cv-04987-GRB-AYS<br>**Fustero-Wright v. St. Joseph's Roman Catholic Church et al** |
| 2:23-cv-04994-GRB-AYS<br>**ARK545 Doe v. St. Hugh of Lincoln et al** |
| 2:23-cv-05000-GRB-SIL<br>**Toth v. St. Mary School et al** |
| 2:23-cv-05003-GRB-AYS |

| | |
|---|---|
| **Brule v. Our Lady of Perpetual Help Roman Catholic Church, et al** | |
| 2:23-cv-05021-GRB-ST | |
| **Marrone v. St. Hugh of Lincoln Roman Catholic Church et al** | |
| 2:23-cv-05024-GRB-AYS | |
| **Elliott v. St. John Nepomucene Church et al** | |
| 2:23-cv-05029-GRB-LGD | |
| **Schramm v. Suffolk County Council, Boy Scouts of America et al** | |
| 2:23-cv-05088-GRB-LGD | |
| **Meyer v. Our Lady of Lourdes Roman Catholic Church** | |
| 2:23-cv-05108-GRB-SIL | |
| **ARK496 Doe v. St. Hugh of Lincoln et al** | |
| 2:23-cv-05109-GRB-AYS | |
| **DeGaetano v. Our Lady of Perpetual Help Parish et al** | |
| 2:23-cv-05115-GRB-AYS | |
| **Rowan v. Saint Lawrence the Martyr Roman Catholic Church** | |
| 2:23-cv-05125-GRB-ST | |
| **Conolly v. St. Hugh of Lincoln Roman Catholic Church** | |
| 2:23-cv-05131-GRB-LGD | |
| **Monaco v. St. Patrick's Church of Smithtown et al** | |
| 2:23-cv-05139-GRB-SIL | |
| **JA-052 Doe v. Suffolk County Council, Inc., Boy Scouts of America et al** | |
| 2:23-cv-05143-GRB-SIL | |
| **ARK668 Doe v. St. John of God et al** | |
| 2:23-cv-05147-GRB-SIL | |
| **Groskopf v. St. Francis Cabrini Roman Catholic Church et al** | |
| 2:23-cv-05151-GRB-LGD | |
| **C. S. v. Our Lady of Mercy Roman Catholic Church** | |
| 2:23-cv-05176-GRB-AYS | |
| **Kretschmar v. St. Brigid's Parish et al** | |
| 2:23-cv-05187-GRB-SIL | |
| **Pedzik v. St. Ladislaus Roman Catholic Church et al** | |
| 2:23-cv-05211-GRB-SIL | |
| **Tiernan v. St Pius X Parish, et al** | |
| 2:23-cv-05215-GRB-ST | |
| **Boyle v. Holy Trinity Diocesan High School** | |
| 2:23-cv-05379-GRB-ST | |
| **Anonymous MWM v. St. Pius X Preparatory Seminary** | |
| 2:23-cv-05415-GRB-ST | |
| **ARK492 Doe v. St. Luke et al** | |
| 2:23-cv-05421-GRB-ST | |
| **Shields v. Holy Family Diocesan High School et al** | |